UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**SHABRIA WILLIAMS,**
      Plaintiff,

v.

**FRANK BISIGNANO,
Commissioner of the Social
Security Administration,**
      Defendant.

**Case No. 4:24-cv-1256-CLM**

## MEMORANDUM OPINION

Shabria Williams seeks disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Williams' application in an opinion written by an Administrative Law Judge ("ALJ"). Williams argues that the ALJ erred in evaluating her subjective pain testimony.

As detailed below, the ALJ did not reversibly err. So the court **WILL AFFIRM** the SSA's denial of benefits.

**I.   STATEMENT OF THE CASE**

    **A.   Williams' Disability, as told to the ALJ**

Williams was 39 on her alleged disability onset date. (R. 99). Williams has a high school education and completed about a year of college. (R. 52, 54). Though Williams has not worked since May 2020, Williams' past relevant work includes working as a caregiver for the mentally challenged and doing production work (chickens) for Keystone Foods. (R. 52–53, 55–58).

At the ALJ hearing, Williams testified that she is 5'6" and weighs 340 pounds. (R. 53). Williams says that she cannot work because of a shooting, sharp pain in her lower back, foot, butt, thighs, and legs. (R. 59). Williams' pain gets worse if she sits or stands too long, but there are no positions Williams can get in that make her comfortable. (R. 60).

Williams also has carpal tunnel syndrome that causes weakness in both hands and makes her drop things. (R. 62). According to Williams, the main issue with her carpal tunnel syndrome is that she has a pins and needles feeling in her hands, numbness, and constant hand pain. (R. 62-64). And Williams has suffered from depression and anxiety for most of her life. (R. 64). At the time of the ALJ hearing, Williams had just started seeing a psychiatrist, and she has taken medication "off and on" to treat her anxiety and depression. (R. 65).

Other physical issues Williams told the ALJ she suffered from include osteoarthritis in both knees, heart problems, asthma, and sleep apnea. (R. 66-68). Sometimes Williams' osteoarthritis causes her knees to go out, and Williams has sharp pain and swelling in both knees. (R. 66). Williams' heart issues stem from her heart fluttering and acting like it's skipping a beat. (R. 68). Williams' asthma results in chronic coughing and shortness of breath, and Williams says her asthma affected the routine and speed of work she could maintain in past jobs. (R. 69).

Williams takes several medications for her impairments, which she says makes her drowsy. (R. 74). So Williams takes about three naps per day. (R. 75). And Williams says her sleep apnea and pain disrupt her sleep at night, so Williams can at most sleep only two and a half to three hours uninterrupted. (R. 75–76).

As for daily activities, Williams lives with her 18-year-old and 14-year-old sons. (R. 53). Williams helps her children out with the chores, but she cannot keep the same pace as she did before her back problems. (R. 81). And Williams' boys do the laundry, sweeping, and mopping. (R. 85). Though Williams dusts and does light cooking. (*See id.*).

Williams testified that she often uses her father's cane or walker to get around the house. (R. 79–80). Williams also had a rail installed to hold onto when getting into the shower and uses a shower chair when she showers. (R. 82–83).

### B.  Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C. Williams' Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Williams applied for DIB, a period of disability, and SSI in March 2022, claiming that she could not work because she suffers from bowel obstruction, lower back pain, and leg pain. (R. 304). After receiving an initial denial in September 2022, Williams requested a hearing, which the ALJ conducted in October 2023. The ALJ ultimately issued an opinion denying Williams' claims in February 2024. (R. 17–38).

At Step 1, the ALJ determined that Williams was not engaged in substantial gainful activity and thus her claims would progress to Step 2.

At Step 2, the ALJ determined Williams suffered from the following severe impairments: lumbar spine degenerative disc disease and osteoarthritis status post hemilaminectomy; osteoarthritis of bilateral knees; carpal tunnel syndrome; depressive disorder; and obesity.

At Step 3, the ALJ found that none of Williams' impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Williams' residual functional capacity.

The ALJ determined that Williams had the residual functional capacity to perform a range of sedentary work with these added limitations:

- Williams can occasionally climb ramps and stairs.

- Williams cannot climb ladders, ropes, or scaffolds.

- Williams can only frequently balance.

- Williams can occasionally stoop, kneel, and crouch.

- Williams cannot crawl.

- Williams can frequently handle and finger with the bilateral upper extremities.

- Williams can have no exposure to unprotected heights, hazardous machinery, or commercial driving.

- Williams can understand and remember simple instructions.

- Williams can maintain attention and concentration to carry out simple instructions in at least 2-hour intervals over an 8-hour workday with customary breaks.

- Williams can have occasional interaction with the general public.

- Williams can adapt to occasional changes in the work environment.

At Step 4, the ALJ found that Williams could not perform her past relevant work as a hand packager or nurse aide. At Step 5, the ALJ determined that Williams could perform jobs, such as nut sorter, cuff, folder, and assembler, that exist in significant numbers in the national economy and thus Williams was not disabled under the Social Security Act.

Williams requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II. STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. LEGAL ANALYSIS

The ALJ found that Williams' "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 29). Williams argues that the ALJ erred in evaluating her subjective pain testimony for four reasons. First, Williams asserts that the ALJ shouldn't have found that Williams' activities of daily living contradicted her pain testimony. Second, Williams says that the ALJ either misconstrued or overlooked the factors in SSR 16-3p. Third, Williams contends that the ALJ gave too little consideration to the effect Williams' obesity has on her ability to work. Finally, Williams says that the objective medical evidence contradicts the ALJ's credibility determination.

6

Below, the court addresses each of these arguments. But first the court will discuss the legal standard ALJs must apply when evaluating a claimant's subjective pain testimony and explain why the ALJ applied the appropriate standard here.

*1. Applicable legal standard*: An ALJ must apply a two-step "pain standard" to subjective testimony regarding pain. Under this standard, the claimant must first present "evidence of an underlying medical condition." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If she does, the claimant must then either (a) present "objective medical evidence confirming the severity of the alleged pain," or (b) show "that the objectively determined medical condition can be reasonably expected to give rise to the claimed pain." *See id.* This court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The ALJ found that Williams' medically determinable impairments could reasonably be expected to cause her alleged symptoms. (R. 29). But the ALJ determined that Williams' "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence in the record." (*See id.*). "In other words, the [ALJ] found that [Williams'] condition could reasonably be expected to give rise to some pain, but it did not 'give rise to the *claimed* pain.'" *Whitmore v. Soc. Sec. Admin., Comm'r*, 855 F. App'x 641, 643 (11th Cir. 2021). To support her credibility determination, the ALJ pointed to Williams' medical records, including her treatment history, primary care records, pain management and orthopedic records, and examination findings, asserting that "[o]verall, the objective medical evidence does not fully support [Williams'] reports of disabling symptoms." (R. 31). The ALJ also found that some of Williams' "activities of daily living further diminish the persuasiveness of [Williams'] allegations." (R. 32). For example, the ALJ noted that Williams could manage her personal care, take medications without needing reminders, prepare simple meals, perform household chores with some help, drive or ride in a car, take her son to school, shop in stores, and manage her finances. (*Id.*).

The ALJ thus applied the correct standard and "clearly articulated" the reasons for her credibility determination. *See Mitchell*, 771 F.3d at 782. So the court may only disturb the ALJ's credibility finding if that finding isn't supported by substantial evidence. *See id.*

*2. Activities of daily living*: Williams says the ALJ's articulated reasons for rejecting her pain testimony are not supported by substantial evidence because the ALJ improperly relied on Williams' daily activities to discredit Williams' testimony. A claimant's admission that she participates in daily activities for short durations does not disqualify the claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), but it is appropriate for an ALJ to consider daily activities relevant to a claimant's subjective pain allegations, *see* 20 C.F.R. § 404.1529(c)(3)(i).

As Williams points out, her ability to watch television, do occasional shopping, and perform other sporadic activities does not rule out the presence of disabling pain. And other daily activities discussed during Williams' hearing testimony, such as Williams needing help getting on and off the toilet and having issues with stumbling, falling, and dropping things, support Williams' pain allegations. But the ALJ didn't err in considering Williams' daily activities as one of several factors that supported her credibility determination. The daily activities the ALJ cited, such as the ability to prepare simple meals and perform chores with some help, contradict Williams' claim that she cannot work in any capacity. And the ALJ didn't rely on only Williams' daily activities to reject her subjective pain testimony. Instead, the ALJ said that the cited daily activities "***further diminish*** the persuasiveness of [Williams'] allegations." (R. 32 (emphasis added)). The court finds that the ALJ's consideration of Williams' daily activities was reasonable and appropriate under the applicable regulations. *See* 20 C.F.R. § 404.1529(c)(3)(i).

*3. SSR16-3p*: Aside from a claimant's daily activities and the objective medical evidence, ALJ's evaluating subjective pain testimony are to consider (1) the location, duration, frequency, and intensity of pain or other symptoms; (2) factors that precipitate and aggravate the symptoms; (3) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (4) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (5) any measures an individual uses or has used to relieve pain or other symptoms; and (6) any other factors concerning an individual's functional limitations and restrictions. *See* SSR 16-3p, 2016 WL 1119029, at *7. Williams says the ALJ overlooked or misconstrued these factors, noting that she reported (1) having constant back pain despite surgery in October 2020; (2) sharp pain that goes down to her legs; (3) sharp pain and swelling from osteoarthritis in both knees; (4) carpal tunnel pain; (5) medication side effects, including drowsiness, nausea, and dizziness; and (6) napping three times per day.

The court disagrees. The ALJ's hearing decision reflects that the ALJ considered Williams' allegations that she had disabling back pain even following her October 2020 surgery, bilateral knee pain, and symptoms consistent with carpal tunnel syndrome. (R. 30–31). The ALJ also discussed the side effects of Williams' medications and included limitations in Williams' residual functional capacity to address these side effects. (R. 28, 32, 35). And as the Commissioner points out, SSR 16-3p does not require an ALJ to accept as a true a claimant's allegations about the intensity and persistence of her symptoms. Instead, an ALJ is to evaluate a claimant's statements about her symptoms "in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether [the claimant is] disabled." *See* 20 C.F.R. § 404.1529(c)(4). Thus, the ALJ appropriately considered the factors listed in SSR 16-3p.

*4. Obesity*: Williams next contends that the ALJ needed to give greater consideration to her obesity's effect on her ability to work. An ALJ must consider the limiting effects of a medically determinable impairment of obesity when assessing a claimant's residual functional capacity. *See* SSR 19-2p, 2019 WL 2374244, at *4. And as with any other impairment, an ALJ must explain how she reached her conclusions on whether obesity causes any limitations. *See id.* ALJs must also keep in mind that "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of the impairments considered separately." *Id.*

At Step 2, the ALJ found that Williams' obesity was a severe impairment. (R. 20-21). And in her residual functional capacity assessment, the ALJ discussed how Williams' "body mass index shows a consistent pattern of obesity" and noted that Williams was 5'6" and weighed 345 pounds, which calculated to a BMI of 55.7. (R. 29).

The ALJ then stated that Williams' obesity "including the effect on exertional functions, non-exertional functions, stress on weight bearing joints, limitations of range or mobility, ability to manipulate objects, ability to tolerate environmental conditions, and physical and mental ability to sustain function over time" was "considered alone and in combination with other impairments in accordance with SSR 19-2p." (*See id.*). In fact, one reason the ALJ found Williams limited to sedentary work was the effects of Williams' obesity on her exertional functions. (R. 32). And the ALJ addressed Williams' obesity's effects on her postural and non-functional exertions by limiting Williams to (1) occasionally climb ramps and stairs; (2) never climb ladders, ropes, or scaffolds; (3) frequently balance; (4) occasionally stoop, kneel, and crouch; and (5) never crawl. (*Id.*). So the court rejects the argument that the ALJ didn't adequately consider or discuss Williams' obesity in evaluating Williams' subjective pain testimony or assessing Williams' residual functional capacity.

*5. Objective medical evidence*: Williams finally points to objective medical evidence that she says supports her allegations of disabling pain, arguing that this evidence shows the ALJ's credibility determination isn't supported by substantial evidence. For example, Williams points out that June 2020 imaging showed disc degenerative joint disease at L4-5 with large disc herniation on the left extending into the lateral recess region affecting the L5-S1 root; L5-S1 degenerative joint disease with minor height loss and diffuse bulging; and degenerative disc disease at L2-3. (R. 486). Williams also notes that she underwent L4-5 hemilaminectomy, partial facectomies, and decompressive discectomy in October 2020. (R. 499-526). As for her knee pain, Williams notes that February 2022 x-rays of her bilateral knees showed moderate arthritic changes with joint space narrowing. (R. 1241).

But the ALJ considered this objective medical evidence in her hearing decision. (R. 29–30). And other objective medical evidence cited by the ALJ supports her credibility determination. For example, the ALJ noted that after Williams' back surgery, examination findings showed that Williams had normal strength, range of motion, and sensation in all extremities; normal reflexes; and normal gait. (R. 31, 735, 808, 816, 821, 827, 836, 841, 847, 852–53, 858–59, 864–65, 870–71, 879, 883–84, 889–90, 895–96, 901–02, 907–08, 913–14, 920, 928, 934, 939–40). And Williams' primary care records show no gait abnormalities even though Williams had lumbosacral tenderness. (R. 31, 620–83, 1179–1234, 1397, 1485–91). Williams' pain management and orthopedic records also showed that she had a normal gait and didn't indicate that Williams needed an assistive device for ambulation. (R. 1240–41, 1421, 1426, 1436, 1441, 1446, 1451).

As for the objective evidence relevant to Williams' carpal tunnel syndrome, the ALJ recognized that NCS/EMG findings were consistent with carpal tunnel syndrome. (R. 31, 1408). But the ALJ noted that Williams' pain management records, which did not show any decreased grip strength, contradicted Williams' allegations of hand numbness and weakness with loss of grip. (R. 31, 1413–27, 1433–53). Instead, Williams' examination findings showed normal strength and sensation. (*See id.*).

11

Those examination findings were consistent with Williams' primary care records, which showed normal motor strength and intact sensory exams. (R. 620–30, 1179–1204, 1318–1368, 1485, 1488).

In short, the ALJ's analysis of the objective medical evidence in the record was reasonable. And the ALJ cited substantial evidence to support her credibility determination. So the ALJ didn't err in assessing the objective medical evidence.

—

Having reviewed the ALJ's hearing decision, Williams' arguments, and the record evidence, the court finds that a reasonable person could have reached the same credibility determination as the ALJ. So even though the court may have made a different credibility determination, the ALJ did not reversibly err in evaluating Williams' subjective pain testimony. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether ALJ could have reasonably credited [Williams'] testimony, but whether the ALJ was clearly wrong to discredit it.").

## IV.  CONCLUSION

For these reasons, the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on July 1, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE